# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-70027

United States Court of Appeals
Fifth Circuit

**FILED**

July 19, 2019

Lyle W. Cayce
Clerk

BILLY JACK CRUTSINGER,

       Petitioner–Appellant,

versus

LORIE DAVIS, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

       Respondent–Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, OWEN, and GRAVES, Circuit Judges.

PER CURIAM:

Billy Crutsinger was convicted and sentenced to death. *Crutsinger v. Davis*, No. 18-70027, 2019 WL 2864445, at \*1 (5th Cir. July 3, 2019). He is scheduled to be executed on September 4, 2019. After our decision to vacate the order transferring his Rule 60(b)(6) motion to this court, *id*. at \*5, Crutsinger moved for a stay of execution. Finding that Crutsinger fails to

No. 18-70027

demonstrate that the circumstances justify the exercise of our equitable discretion, we deny the motion.

I.

"[A] stay of execution is an equitable remedy.  It is not available as a matter of right, and equity must be sensitive to the [s]tate's strong interest in enforcing its criminal judgments without undue interference from the federal courts."  *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *see also Sepulvado v. Jindal*, 729 F.3d 413, 420 (5th Cir. 2013).

"[A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *United States v. Burr*, 25 F. Cas. 30, 35 (C.C.D. Va. 1807) (No. 14,692D) (Marshall, C.J.).  Consequently, we weigh four factors when deciding whether to grant a stay of execution.  *Murphy v. Collier*, 919 F.3d 913, 915 (5th Cir. 2019) (per curiam); *Charles v. Stephens*, 612 F. App'x 214, 218 n.7 (5th Cir. 2015) (per curiam); *see also Nken v. Holder*, 556 U.S. 418, 425–26 (2009).  First, "whether the stay applicant has made a strong showing that he is likely to succeed on the merits."  *Charles*, 612 F. App'x at 218 n.7 (citation omitted).  Second, "whether the applicant will be irreparably injured absent a stay."  *Id.* (citation omitted).  Third, "whether issuance of the stay will substantially injure the other parties interested in the proceeding."  *Id.* (citation omitted). And fourth, "where the public interest lies."  *Id.* (citation omitted).

"The first two factors of the traditional standard are the most critical.  It is not enough that the chance of success on the merits be better than negligible."  *Nken*, 556 U.S. at 434 (internal quotation marks and citation omitted). "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public

2

No. 18-70027

interest." *Id.* at 435. Moreover, "[t]hese factors merge when the Government is the opposing party," *id.*, and "courts must be mindful that the Government's role as the respondent in every . . . proceeding does not make the public interest in each individual one negligible," *id.*

## II.

## A.

Crutsinger asserts that he has "made a strong showing that he is likely to succeed" on the merits of his claim such that "this case should proceed in federal court without the pressures of a state execution setting." He highlights our determination that his Rule 60(b)(6) motion was not a second-or-successive habeas petition, while emphasizing that the dissent "conclude[d] that . . . Crutsinger's motion under Federal Rule of Civil Procedure 60(b)(6) should be granted" (quoting *Crutsinger*, 2019 WL 2864445, at *5 (Graves, J., dissenting)). Therefore, he maintains that he has satisfied the first factor.

In response, the state contends that "Crutsinger cannot demonstrate a strong likelihood of success on the merits." The state cites precedent establishing that "a movant seeking relief under Rule 60(b)(6) [must] show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (citation omitted). "Such circumstances will rarely occur in the habeas context." *Id.* Moreover, the state avers that "the Supreme Court has made abundantly clear that mere changes in decisional law are hardly extraordinary."

The state also maintains that the various cases relied upon by Crutsinger to justify relief under Rule 60(b)(6)—*i.e.*, *Ayestas v. Davis*, 138 S. Ct. 1080 (2018), *Trevino v. Thaler*, 569 U.S. 413 (2013), and *Martinez v. Ryan*, 566 U.S. 1 (2012)—are merely changes in decisional law insufficient to warrant such relief. In fact, the state emphasizes that our precedent forecloses any

reliance on *Martinez* or *Trevino*.[1]   Moreover, the state asserts that if, as in *Gonzalez*, "a change in law that *entirely* precluded merits review is not sufficient to warrant Rule 60(b)(6) relief," then, as in *Ayestas*, "a change in the law on a lesser matter—funding to possibly support a claim for relief—necessarily cannot warrant Rule 60(b)(6) relief."  Consequently, the state concludes that "Crutsinger . . . wholly fails to establish extraordinary circumstances or that he is likely to succeed on the merits of his claims."

The state's conclusion accords with our decision in *Crutsinger*.  Though acknowledging that we were without jurisdiction to make a merits determination on his Rule 60(b)(6) motion, we underscored that Crutsinger was unlikely to establish that "extraordinary circumstances" exist to justify the reopening of the final judgment because "not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final."  *Crutsinger*, 2019 WL 2864445, at \*4 (quoting *Gonzalez*, 545 U.S. at 536).  Crutsinger's motion, with its focus on mere changes in decisional law, provides us with no occasion to doubt that conclusion.  Consequently, because Crutsinger is unlikely to succeed on the merits, this factor weighs against granting a stay.

## B.

Crutsinger's inability to establish a likelihood of success on the merits is, effectively, dispositive of the motion for stay.  *See Adams*, 679 F.3d at 320.  But even assuming *arguendo* he could establish a likelihood of success, the

---

[1] *See Adams v. Thaler*, 679 F.3d 312, 319–20 (5th Cir. 2012) (concluding that *Martinez* was merely a change in decisional law and did not constitute extraordinary circumstances sufficient to justify relief from a final judgment); *see also Haynes v. Davis*, 733 F. App'x 766, 769 (5th Cir. 2018) (noting the petitioner's "acknowledge[ment] that the change in decisional law effectuated by *Martinez* and *Trevino* [was] insufficient, on its own, to demonstrate 'extraordinary circumstances'"); *Diaz v. Stephens*, 731 F.3d 370, 376 (5th Cir. 2013) (affirming that *Trevino* did not undermine *Adams*).

No. 18-70027

other factors also weigh in favor of the state and against a stay.

With respect to the risk of irreparable injury to the applicant,[2] Crutsinger contends that he "will be irreparably injured absent a stay" because he "is exposed to the substantial risk that meritorious habeas corpus claims will never be heard." Citing *McFarland v. Scott*, 512 U.S. 849, 858 (1994), and *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016), Crutsinger avers that he "may not be executed until he has been afforded the representation in federal collateral proceedings that he is due under 18 U.S.C. § 3599." Consequently, Crutsinger requests that we "stay [his] execution to permit the orderly adjudication of the legality of his confinement under federal law."

Crutsinger also claims that the public interest weighs in favor of granting a stay because he "has not had a meaningful opportunity in either state or federal court to present his Sixth Amendment IATC failure-to-investigate claim." He notes the dissent's assertion that the majority "risk[ed] . . . undermining the public's confidence in the judicial process by allowing an erroneous decision, the denial of funding based on procedural bar, to dictate the outcome of every decision that follows rather than just requiring the proper consideration of the motion for funding" (quoting *Crutsinger*, 2019 WL 2864445, at *9 (Graves, J., dissenting)). Accordingly, Crutsinger concludes that we should grant his stay motion.

In response, the state contends that Crutsinger misreads *McFarland* and *Battaglia*. *McFarland*, the state maintains, stands for the unremarkable

---

[2] *Charles*, 612 F. App'x at 218 n.7. Crutsinger addresses the second and third stay factors in conjunction with one another. Concerning the harm to the state, Crutsinger notes that "a stay will not substantially injure Director Davis, the other party interested in the proceeding." He also quotes the *Crutsinger* dissent, which stated that "[t]he risk of injustice to Crutsinger in not reopening the judgment and properly deciding his funding motion is great, while the risk of injustice to the government is nonexistent." 2019 WL 2864445, at *9 (Graves, J., dissenting).

proposition that "[u]nder ordinary circumstances, a capital defendant presumably will have sufficient time to request the appointment of counsel and file a formal habeas petition prior to his scheduled execution" (quoting *McFarland*, 512 U.S. at 858). *Battaglia*, the state stresses, "similarly does not avail him, as it dealt with the complete abandonment of counsel and the need for new, unfamiliar counsel to have time to raise new claims, not with any right to discovery." Crutsinger, however, has been well-represented by his counsel for approximately eleven years, and there is no indication that, as in *McFarland* or *Battaglia*, "he would be deprived of meaningful counsel absent a stay."

Moreover, the state also avers that "Crutsinger cannot show irreparable harm because the courts have enough time to rule on the issues presented." The state emphasizes that "the parties have already briefed the merits of the Rule 60(b) motion *and* the merits of the underlying funding request in the court below." The deadline for any supplemental briefing the parties wish to submit is July 19, 2019, approximately six weeks before the execution date of September 4, 2019. Consequently, the state asserts that the district court will have enough time to rule on the issues presented by Crutsinger's motion—issues that have already been reviewed by numerous state and federal courts, including this one.

Finally, the state emphasizes that it "has a strong interest in carrying out a death sentence properly imposed for a senseless capital murder that occurred over fifteen years ago," and it underscores that "the public's interest lies in executing a sentence duly assessed and for which more than a decade's worth of judicial review has terminated without finding reversible error." Consequently, because "[p]rotecting against abusive delay *is* an interest of justice," *Martel v. Clair*, 565 U.S. 648, 662 (2012), the state avers that we should deny a stay.

No. 18-70027

Even if Crutsinger could establish a likelihood of success on the merits—which he cannot—the other factors weigh in favor of the state. At this point, a denial of his stay motion would not prevent him from fully and fairly litigating the merits of his Rule 60(b)(6) motion before the district court. If, in the coming weeks, that court finds that a stay of execution becomes necessary, it has the equitable power to grant one.

Moreover, "equity must be sensitive to the [s]tate's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill*, 547 U.S. at 584. Ultimately, because Crutsinger cannot show a likelihood of success on the merits, and because the other factors weigh in favor of the state, the motion for a stay of execution is DENIED.

\* \* \* \* \*

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

I conclude that the four relevant factors considered in whether to grant a stay of execution, as set out by the majority, weigh in favor of Billy Jack Crutsinger. Because I would grant the stay of execution, I respectfully dissent.

7